UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES ARTHUR BESTEMAN,

        Plaintiff,

v.

Case Number 06-10223-BC
Honorable Thomas L. Ludington

CLARE COUNTY DEPUTY ROBERT
HAGER, CLARE COUNTY DEPUTY
JARED E. STOTZEL, MICHIGAN STATE
TROOPER JOHN LATOR, MICHIGAN
STATE TROOPER SCOTT TAYLOR,

        Defendants.
_____ /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS HAGER AND STOTZEL'S MOTION
FOR SUMMARY JUDGMENT AND DISMISSING WITH PREJUDICE
PLAINTIFF'S CLAIM OF MALICIOUS PROSECUTION**

On January 17, 2006, Plaintiff James Besteman filed suit against Defendants Robert Hager, Jared Stotzel, Josh Lator, and Scott Taylor. The first two defendants are Clare County deputies; the second two defendants are Michigan state troopers. Based on a traffic stop and arrest that allegedly spiraled out of control, Plaintiff pursues claims of false arrest, false imprisonment, assault and battery, malicious prosecution, and violations of his rights under the Fourth Amendment,[1] through 42 U.S.C. § 1983.

I.

Plaintiff's rendition of the events of the evening of January 13, 2005, offered in his complaint

---

[1]On May 11, 2006, the Court dismissed Plaintiff's claims of a violation of § 1983 based on violations of the Fifth, Eighth, and Ninth Amendments, relying on *Graham v. Connor*, 490 U.S. 386 (1989), which requires courts to analyze excessive force claims only under the Fourth Amendment. *See* [dkt #8].

and then further developed in his depositions, contrasts with the deposition testimony of the four defendants. Significant points of departure between their versions include the circumstances of when and why Plaintiff exited a vehicle around the time of a traffic stop and the circumstances of the later confrontation between Plaintiff and Defendants.

According to his complaint, Plaintiff exited a vehicle driven by Scott Tessman at about 11:30 p.m. and walked into nearby woods. Plaintiff explains that he then saw a police vehicle at the traffic stop and, after traversing the woods, noticed Defendants Hager and Stotzel pursuing him. He indicates that the officers approached him without identifying themselves as police officers.

Plaintiff alleges in his complaint that, when the officers reached him, he handed his keys and wallet to Defendant Stotzel, who knocked them from his hands and discharged pepper spray into his eyes. Plaintiff claims that he asked to get on the ground on his own initiative. Instead, Defendant Stotzel, with the assistance of Defendant Hager, took him down bodily.

Plaintiff alleges that Defendant Lator then kicked him in the ribs, handcuffed him, and battered him. Plaintiff further recites admissions from Defendant Lator that he buried his knee in Plaintiff's ribs, that Defendant Taylor grabbed Plaintiff's head, that the force of those impacts knocked Defendant Stotzel off Plaintiff's back, and that they placed a spit mask/guard on Plaintiff's face, which Defendant Lator shoved into place. According to Plaintiff, they left him laying face down on the ground for twenty minutes, and they blackened his eye and broke his nose. Plaintiff reports injuries of a fractured nose and orbital bone, along with multiple contusions.

Plaintiff was deposed on September 20, 2006 and November 30, 2006. According to Plaintiff's deposition, he noticed a car, which turned out to be a police vehicle, oncoming as

Tessman[2] drove to a friend's house. Plaintiff alleges that he spontaneously decided to visit a different friend about a mile or two away from that location. Plaintiff states that Tessman slowed down but did not stop. Plaintiff maintains that he hopped out of the front passenger seat into the eight to ten inches of snow on the ground. Plaintiff had not spoken to the friend he intended to visit in weeks. He had a coat, no gloves, boot-like tennis shoes, and an allegedly empty knife sheath on his belt, which he explained was an item he was working on for Tessman's son. Plaintiff asserts that the presence of the police car had no bearing on his decision to leave Tessman's car, and he claims that he exited the vehicle while it was still moving because Tessman was having difficulty stopping the car on the shoulder, due to the weather conditions.

Plaintiff asserts that he then headed up a hill into the woods before the police pulled Tessman over. Plaintiff states that he turned around when he noticed the police car's flashing lights and then observed the traffic stop. In the woods, he claims that he walked but mostly did not run. When he left the woods and entered a residential neighborhood, three police vehicles were there, and one shined a spotlight on him. He turned to see two men, who he believed to be police officers, approaching him. He recognized Defendant Stotzel, though he did not know Defendant Hager.

He claims that he then stopped. Plaintiff claims that he suspected (but did not know) that he had an absconding warrant for not reporting to his parole officer. He insists that he extended his hands with the contents of his pockets, to ease his interaction with the officers, but that they immediately used a common technique for sending him to the ground by twisting his arm. He claims that Defendant Taylor kicked him in the face, that Defendant Lator put a knee in his kidney, that Defendants Stotzel and Hager were on top of him, that Defendant Stotzel pepper sprayed him,

---

[2]Tessman's son, about age ten, was the third person in the vehicle.

that he struggled and asked them to let him to lie quietly, and that Defendant Lator crushed a spit mask onto his face.

According to Defendant Hager's deposition, he turned around on the road to pull over a car that was slow to dim its headlights. As he approached, he noted that the registration light was out. He states that he observed a passenger run away from the car into the woods. Defendant Hager testified that he activated his flashers before the passenger exited the car. Defendant Hager alleges that he asked the driver who left the car, to which the driver responded that he did not know. Defendant Hager then took the Tessman's license, locked it in the police car, notified the dispatcher, and followed the man into the woods. Defendant Hager followed the tracks, generally walking, and eventually Defendant Stotzel joined him. Defendant Hager stated that he fell a few times in the woods, tweaked his knee, but did not fall in the three-foot hole into which it appeared Plaintiff had fallen.

Outside the woods, Defendant Hager saw Plaintiff about 125-150 yards ahead, at the end of the tracks. According to Defendant Hager, Defendant Stotzel twice told Plaintiff to stop, but Plaintiff responded "No" and kept walking. Defendant Hager observed that Defendant Stotzel discharged pepper spray toward Plaintiff but also accidentally ingested some himself and needed to recover. The other three defendants attempted to get Plaintiff's hands behind his back to cuff him.

According to Defendant Stotzel's deposition, he responded to a call from Defendant Hager for assistance pursuing a man who fled a traffic stop. They tracked him for about a mile through the woods. When Defendants Hager and Stotzel saw him, they ran after him. Defendant Stotzel claims that he commanded the man to stop, but the man kept going. Defendant Stotzel, who was in uniform, again allegedly yelled "Stop," but the man did not stop. Defendant Stotzel claims that he

grabbed the man's shoulder, pepper sprayed Plaintiff (with some spray affecting himself), and fell to the ground with Plaintiff. Defendant Stotzel alleges that he was knocked off Plaintiff and that the particulars of the actions of others (such as the handcuffing) were, consequently, less clear to him.

According to Defendant Lator's deposition, he rode as a passenger with Defendant Taylor. He states that they responded to Defendant Hager's call and attempted to keep a perimeter so as to find the subject. He claims that they received a call from a citizen, reporting that a man was walking down the street followed by two deputies. Defendants Lator and Taylor arrived, with their spotlight on and illuminating the street before them. Defendant Lator asserts that he observed the subject dragging Defendant Stotzel down the street on his back, as Defendant Stotzel attempted to bring the man to the ground.

According to Defendant Lator, he left the moving vehicle in an attempt to assist Defendant Stotzel. Defendant Lator then tackled Plaintiff and placed his knee in his back. Defendant Lator maintains that he repeatedly ordered Plaintiff to stop resisting, but the struggle continued. Eventually, three officers cuffed Plaintiff. Defendant Lator then used a technique of crossing Plaintiff's ankles and bending the legs at the knees up toward the buttocks to force Plaintiff to stop rolling around on the ground. Defendant Lator alleges that, once the cuffs were on, he was the only person with physical control over Plaintiff. Defendant Lator also states that he placed a spit mask on Plaintiff to keep blood from his nose from running onto the car. According to Defendant Lator, at Plaintiff's request, he adjusted the tab on the mask to hold it in place on Plaintiff's nose.

According to Defendant Taylor's deposition, he and Defendant Lator responded to a call by canvassing the area to watch for the subject. Defendant Taylor claims that he and Defendant Lator tackled Plaintiff at about the same time. Defendant Taylor states that he placed his knee between

-5-

Plaintiff's shoulders and attempted to gain control of his right arm. In most other respects, Defendant Taylor's testimony corresponds with Defendant Lator's testimony.

Plaintiff was placed under arrest for resisting an officer. At the preliminary exam, the judge dismissed the charges, Defendants report, because they failed to identify themselves as law enforcement officers.

Defendants Hager and Stotzel filed a motion for summary judgment under Federal Rule of Civil Procedure 56. Defendants Lator and Taylor have not joined in this motion or responded to it. Plaintiff did not timely file a response to the motion for summary judgment, and in an order of June 1, 2007, the Court denied Plaintiff's motion for an extension of time to do so.

Despite the limited filings pertaining to the instant motion, the Court has reviewed Defendants Hager and Stotzel's submissions and finds that the relevant law and facts have been set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion, particularly because the lack of a response from Plaintiff prevents him from arguing at the hearing, under the Court's scheduling order of September 26, 2006. *See* [dkt #21, § VIII]. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

II.

Under Federal Rule of Civil Procedure 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

III.

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The privilege serves the purpose of – early in litigation – preventing suits from progressing because qualified immunity is *immunity* from suit, not merely a defense to liability. *See id*. at 200-201.

The analysis unfolds in two steps. First, the court must determine whether a constitutional violation has occurred. *Id.* at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. Second, if a constitutional violation has occurred, the court must then determine whether the constitutional right that was violated was "clearly established" at the time of the violation – in the specific facts of the case, not on an abstract basis *Id.* Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id*. at 202. Denying summary judgment at any time that a material issue of fact remained on the underlying claim would diminish the effectiveness of qualified immunity, i.e., the benefit of avoiding excessive disruption of the government and permitting insubstantial claims to be resolved on summary judgment. *See id*. Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2001) (citation omitted).

A.

Traffic stops may be conducted where the police have "probable cause to believe that a traffic violation has occurred." *Whren v. United* States, 517 U.S. 806, 810 (1996) (citations omitted). The Sixth Circuit has held that, "so long as [an] officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1991) (citation omitted). Additionally, an officer may detain the vehicle or its occupants only so far as consistent with the basis for the stop, "unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *United States v. Bailey*, 302 F.3d 652, 657-658 (6th Cir. 2002) (citations omitted).

No one has suggested that Defendant Hager wrongfully stopped Tessman's car. The facts are uncontested that Defendant Hager observed an oncoming vehicle that was slow to dim its bright headlights and that had a registration light out. Consequently, Defendant Stotzel legitimately stopped Tessman's vehicle.

In addition, flight from a legitimate traffic stop could support an inference of criminal activity, sufficient to establish probable cause for an arrest. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight – wherever it occurs – is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). Moreover, in Michigan, the felony of resisting or obstructing an officer under Mich. Comp. Laws § 750.81d includes resistance or obstruction of "a person who the individual knows or has reason to know is performing his or her duties . . . ." "Obstruction" includes "a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a); *see also* Mich. Comp. Laws § 750.479. Flight from a lawful directive of an officer, coupled with other considerations, can constitute

resisting and obstructing. *See People v. Pohl*, 523 N.W.2d 634, 635 (Mich. Ct. App. 1994) ("Although [the subject] did not physically obstruct the officer, [his flight from an officer at a traffic stop] hindered an officer conducting a police investigation—a police function covered by the resisting and obstructing statute.") (citations omitted); *see also People v. Philabaun*, 602 N.W.2d 371, 375 (Mich. 1999) (not requiring physical resistance, threats, or abusive speech to support a charge of resisting and obstructing an officer); *People v. Vasquez*, 631 N.W.2d 711, 720 (Mich. 2001) (reiterating that a refusal to cooperate, though passive, could amount to a physical interference with officers).

In order to make an arrest, an officer must have probable cause to do so. Indeed, "[a] warrantless arrest by an officer is reasonable under the Fourth Amendment when the arrest is in public and there is probable cause to believe that a criminal offense has been or is being committed." *Fox v. DeSoto*, ___ F.3d ___; 2007 WL 1584212, *6 (6th Cir. June 4, 2007) (citing *United States v. Watson*, 423 U.S. 411, 417 (1976)). "Probable cause" requires officers to determine "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [subject] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations omitted). Here, probable cause to arrest Plaintiff for resisting and obstructing an investigation would require a showing that he knowingly did not comply with a lawful command, such as fleeing a traffic stop.

Additionally, to prevail on a claim of a wrongful arrest, a plaintiff bears the burden to show that police lacked probable cause. *Fridley v. Hughes*, 291 F.3d 867, 872 (6th Cir. 2002) (citation omitted). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215

(6th Cir. 1995) (citation omitted).

Defendant Hager asserts that Plaintiff left Tessman's car after the traffic stop commenced and after Defendant Hager activated the overhead lights on his police car. Plaintiff disputes those facts. He insists that he innocently left his friend's vehicle without recognizing that Defendant Hager was initiating a traffic stop.

Plaintiff would have the jury believe that, around 11:30 at night in the middle of January, with some eight inches of snow on the ground, he hopped out of a moving car and went quickly into the woods. After the fact, he theorizes that his departure from the vehicle might have prompted the stop. He asserts that he did not see flashing lights before he left Tessman's car but that he turned to see the lights when he noticed their reflection on the trees. Plaintiff acknowledges that he wore neither boots nor gloves, despite the weather conditions. Although the following information was not objectively available to the officers as events unfolded, he admits that he had not recently contacted the friend he alleges he hopped out to visit and that he believed he faced a warrant for absconding from parole suspension. An empty knife sheath hung from Plaintiff's belt, and Defendants eventually observed that fact. Although Plaintiff may face a challenge to persuade a jury that his "walk in the woods" was unconnected to the initiation of the traffic stop, Plaintiff's testimony nonetheless frames a material question of fact.

Apart from Plaintiff's allegations that Defendants lacked probable cause to pursue him through the woods after the traffic stop, Plaintiff also claims that Defendants employed excessive force when they acted to detain him. "[A]ll claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard .

. . ." *Graham*, 490 U.S. at 395 (italics omitted). Whether a seizure is reasonable requires balancing the interests of the individual against intrusion against the interests of the government. *Id*. at 396. This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citation omitted). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

Ultimately, the inquiry must focus on the totality of the circumstances. *Livermore v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007) (citation omitted). "The test is 'reasonableness at the moment' of the use of force, as judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007) (citations and internal quotations omitted). An officer must effect a Fourth Amendment seizure with the least intrusive means that are "reasonably available." *St. John v. Hickey*, 411 F.3d 762, 774-775 (6th Cir. 2005) (citation omitted). If the reasonableness of the use of force is the crux of the qualified immunity determination and if a fact-intensive inquiry into the reasonableness of that force remains, then summary judgment is improper, and the case should go to a jury. *Id*. (citations omitted).

Here, even without a response from Plaintiff, an issue of fact is presented. Defendants assert that they exercised an escalating amount of force to subdue a subject who did not stop when so directed and who resisted their attempts to force him to stop. Plaintiff, in his deposition testimony

as provided by Defendants, asserts that he attempted to make the arrest process straightforward and to comply with their directives. Plaintiff maintains that he asked to be allowed to lie still but that Defendants continued to remain on top of him, which forced his body to move. Accordingly, an issue of fact remains regarding the reasonableness of the use of force applied to subdue Plaintiff.

Thus, even without the benefit of a response brief, Plaintiff's claims of a violation of his rights under the Fourth Amendment require factual determinations reserved to a jury, so summary judgment for Defendants Hager and Stotzel, as to Plaintiff's remaining § 1983 claim, is not warranted. Moreover, if Plaintiff's allegations are accepted, they would show a violation of a constitutional right, either because Defendants arrested him without probable cause or because they used excessive force. Further, an arrest without probable cause or the use of excessive force to execute an arrest are both clearly established violations of the Fourth Amendment. Consequently, Defendants Hager and Stotzel have not demonstrated their entitlement to qualified immunity.

B.

In addition to his claim under § 1983, Plaintiff advances state law claims, including claims of false arrest or false imprisonment. "A false arrest is an illegal or unjustified arrest." *Lewis v. Farmer Jack Division, Inc.*, 327 N.W.2d 893, 894 (Mich. 1982). A false arrest does not require a showing of the innocence of the person arrested, and if the arrest has a legal basis, then the plaintiff cannot pursue that claim. *Id*. at 894 nn.1, 2. False imprisonment occurs if a person intends to confine another within boundaries fixed by that actor, the action directly or indirectly results in the confinement of the other, and the other is conscious of or harmed by the confinement. *Adams v. Nat'l Bank of Detroit*, 508 N.W.2d 464, 474 n.8 (Mich. 1993) (citing 1 Restatement of Torts 2d § 35, p. 52).

Here, Defendants Hager and Stotzel address these claims only briefly. More significantly, they offer only federal case law to support their argument for summary judgment on the state law claims of false arrest or false imprisonment. At a minimum, federal law is not dispositive of state law claims. More importantly, a contested issue of fact remains, i.e., whether Plaintiff observed the police flashers before he left Tessman's car and, even if he did not, whether he was unaware of Defendants' later alleged directives for him to stop. The lawfulness of the arrest turns on the same probable cause analysis relevant to one aspect of his § 1983 claim. If the arrest was legal, then these claims should be dismissed. On the facts presented in Defendants Hager and Stotzel's motion, however, that issue cannot be resolved without the involvement of a factfinder. Accordingly, summary judgment for Defendant Hager and Stotzel as to Plaintiff's claims of false arrest or false imprisonment is not warranted.

## C.

Plaintiff also raised a state law claim of assault and battery. "An assault is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Espinoza v. Thomas*, 472 N.W.2d 16, 21 (Mich. Ct. App. 1991) (citations omitted). "A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id*. (citations omitted).

As with the false arrest and false imprisonment claims, Defendants Hager and Stotzel address this claim only briefly. More significantly, they again offer only federal case law to support their argument for summary judgment on the state law claim of assault and battery. As stated above, at

a minimum, federal law is not dispositive of a state law claim. More importantly, contested issues of fact remain as to the legitimacy of the use of force in subduing Plaintiff. If Defendants used an unwarranted amount of force, then that claim should be dismissed. On the facts presented in Defendants Hager and Stotzel's motion, however, that issue cannot be resolved without the involvement of a factfinder. Accordingly, granting Defendants Hager and Stotzel summary judgment as to Plaintiff's claim of assault and battery is not warranted.

D.

Finally, Plaintiff includes a claim for malicious prosecution. To establish a claim of malicious prosecution, a plaintiff must show:

> (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.

*Matthews v. Blue Cross & Blue Shield*, 572 N.W.2d 603, 609-610 (Mich. 1998) (citations omitted). Generally, the central inquiry is on the existence of probable cause, without which the claim necessarily fails. *Belt v. Ritter*, 171 N.W.2d 581, 585 (Mich. Ct. App. 1969). In *Belt*, the Michigan Court of Appeals stated that police officers could be found liable for malicious prosecution. *Id*. at 585-586. In the context of discussing sworn statements to a prosecutor, the Court of Appeals stated that a claim for malicious prosecution only lies against a police officer if the "officer knowingly swears to false facts in a complaint, without which there is no probable cause." *Id*. at 586.

Here, although the matter of probable cause to arrest Plaintiff remains at issue, nothing in the current record supports even the supposition concluding that Defendants Hager and Stotzel acted with malice in detaining Plaintiff. As a result, granting summary judgment to Defendants Hager and

Stotzel as to Plaintiff's claim of malicious prosecution is warranted.

IV.

Accordingly, it is **ORDERED** that Defendants Hager and Stotzel's motion for summary judgment [dkt #34] is **GRANTED IN PART** and **DENIED IN PART**. Defendants Hager and Stotzel are **GRANTED** summary judgment only as to Plaintiff's claim of malicious prosecution, and Plaintiff's count V is **DISMISSED WITH PREJUDICE**.

                                                                             s/Thomas L. Ludington  
                                                                             THOMAS L. LUDINGTON  
                                                                             United States District Judge

Dated: June 8, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 8, 2007.

                                      s/Tracy A. Jacobs  
                                        TRACY A. JACOBS